PD-0070-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/29/2015 9:18:34 AM
Accepted 1/29/2015 3:24:42 PM
ABEL ACOSTA
CLERK

No. PD-0070-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

DONALD LYNN RAMSEY,                                                    Appellant
a/k/a DONALD LYNN RAMSAY

v.

THE STATE OF TEXAS,                                                    Appellee

Appeal from Swisher County

\*   \*   \*   \*   \*

STATE'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

January 29, 2015

ABEL ACOSTA, CLERK

\*   \*   \*   \*   \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney
Bar I.D. No. 24031632

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512-463-1660 (Telephone)
512-463-5724 (Fax)

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES, AND COUNSEL.. . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Does an appellate court give proper deference to a jury's forgery finding of intent to defraud or harm when it fails to consider the totality of the evidence and rational inferences therefrom?**

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-9

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

APPENDIX (Opinion of the Court of Appeals)

**IDENTITY OF JUDGE, PARTIES, AND COUNSEL**

\*	The parties to the trial court's judgment are the State of Texas and Appellant, Donald Lynn Ramsey a/k/a Donald Lynn Ramsay.

\*	The trial Judge was Hon. Edward Lee Self.

\*	Counsel for the State at trial and before the Court of Appeals was Swisher County Attorney J. Michael Criswell, 119 South Maxwell, Tulia, Texas 79088.

\*	Counsel for the State before the Court of Criminal Appeals is Stacey M. Goldstein, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

\*	Counsel for Appellant at trial was Tina Davis-Rincones, 109 East 6th Street, Plainview, Texas 79072.

\*	Counsel for Appellant before the Court of Appeals was Troy Bollinger, 600 Ash Street, Plainview, Texas 79072.

# INDEX OF AUTHORITIES

**Cases**

*Jackson v. Virginia*, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Okonkwo v. State*, 398 S.W.3d 689 (Tex. Crim. App. 2012).. . . . . . . . . . . . . . . . . 5

*Ramsey v. State*, No. 07-14-00249-CR, 2014 Tex. App. LEXIS 13519 (Tex. App.—Amarillo Dec. 17,  2014) (not designated for publication). . . . . . . . . . 2, 4,7

*Stuebgen v. State*, 547 S.W.2d 29 (Tex. Crim. App. 1977). . . . . . . . . . . . . . . . . . . 7

*Wise v. State*, 364 S.W.3d 900 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . 8 n.2

**Statute**

TEX. PENAL CODE § 32.21(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

No. PD-0070-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS


DONALD LYNN RAMSEY                                          Appellant
a/k/a DONALD LYNN RAMSAY,

v.

THE STATE OF TEXAS,                                         Appellee



Appeal from Swisher County

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State Prosecuting Attorney respectfully urges this Court to grant review.

**STATEMENT REGARDING ORAL ARGUMENT**

The State does not request oral argument.

1

## STATEMENT OF THE CASE

A jury convicted Appellant of forgery of a check by passing, enhanced because it was committed against an elderly person, and sentenced him to six years' imprisonment and assessed a $1,000 fine.

## STATEMENT OF PROCEDURAL HISTORY

Over a dissent, the court of appeals reversed the trial court's judgment and entered a judgment of acquittal. *Ramsey v. State*, No. 07-14-00249-CR, 2014 Tex. App. LEXIS 13519 (Tex. App.—Amarillo Dec. 17, 2014) (not designated for publication). The State did not seek rehearing.

## STATEMENT OF FACTS

**Background**

Eighty-four-year-old Jimmie Owens and his son Jed owned Owens Motor Machine. 1 RR 131. Appellant worked for the Owens' for four to five months and lived at the business's shop. 1 RR 103, 133. Jed typically parked his work-truck inside the shop in the evenings and left it unlocked. 1 RR 134-35. Jed kept the business's checkbook in an inside pocket on one of the truck's doors. 1 RR 127, 134. Both Jimmie and Jed were signatories on the account. 1 RR 120, 131, 133-34. Jimmie was listed as "J.E. Owens," and Jed was listed as "J.J. Owens." 1 RR 121, 123, 132, 136. Jimmie usually signed checks as "J.E. Owens," but sometimes signed

2

as "Jimmie E. Owens."[1]  1 RR 123-24, 136.  Jimmie always paid Appellant by check and included the notation "contract labor" on the memo line. 1 RR 125, 127.  The Owens had previously given a nearby liquor store permission to cash Appellant's paychecks.  1 RR 150.

In June 2013, Appellant tendered a $65 check payable to him from the Owens Motor Machine account at the liquor store.  Some of the money was used for goods, and the remainder was given to Appellant as change.  1 RR 151-52.  The signature on the check read "Jim E. Owens," and "Contract Labor" was written in the memo line. 1 RR 135; State's Exhibit 2.

Neither Jimmie nor Jed had signed or issued the check to Appellant.  1 RR 124, 136.  Jed testified that Appellant was their only employee in June 2013, as well as the preceding six months.  1 RR 136.  He also believed that, with the exception of his father, Appellant was the only other person to have access to his truck.  1 RR 136-38. Jed acknowledged that other people sometimes stopped by the shop but stated that they typically just called him.  1 RR 139-40.

---

[1]  Jimmie also explained that he signed checks with "Jimmie Owens" a long time ago.  1 RR 129.

**Court of Appeals**

A majority of the court of appeals held that the State failed to prove that Appellant intended to defraud or harm because there was no evidence that Appellant knew the check was forged. *Ramsey*, 2014 Tex. App. LEXIS 13519, at *6. It required evidence of the number of checks previously written and the name appearing on the signature line before a jury could "logically" infer that Appellant knew whether the signature was fake or genuine. *Id*. at *7. The majority also concluded that Appellant's knowledge of the forgery cannot be inferred from the fact that it was not signed "J.E. Owens." *Id*. at *6. Jimmie testified that he signed checks using "Jimmie Owens" and "Jimmie E. Owens." *Id*.

The dissent maintained that the evidence circumstantially established Appellant knew the check was forged. *Id*. at *12-13 (Prible, J., dissenting). When Appellant passed the check noting "Contract Labor" he inferentially represented it was given for services rendered, but the evidence showed that it was not given for services rendered. *Id*. at *12. Further, Appellant had access to the checkbook and passed it at a place he knew it would be honored. *Id*.

**GROUND FOR REVIEW**

**Does an appellate court give proper deference to a jury's forgery finding of intent to defraud or harm when it fails to consider the totality of the evidence and rational inferences therefrom?**

4

## ARGUMENT

The court of appeals' consideration of the facts, and reasonable inferences drawn therefrom, was severely deficient. As a result, it failed to give proper deference to the jury's determination that Appellant knew the check was forged.

When reviewing the sufficiency of the evidence, all of the evidence is considered in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, the factfinder was justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The factfinder is the sole judge of credibility and weight given to the evidence and is permitted to draw multiple reasonable inferences from facts when supported by the evidence *Id*. at 319. When there are conflicting inferences, it must be presumed that the factfinder resolved them in favor of the verdict. *Id*. at 326.

The offense of forgery includes the elements of intent to defraud or harm another. TEX. PENAL CODE § 32.21(b). Proof of those elements is established by showing that the actor knew the writing was forged. *Okonkwo v. State*, 398 S.W.3d 689, 695 (Tex. Crim. App. 2012).

Giving proper deference to the jury's guilty verdict, the State satisfied its burden to prove that Appellant knew the check was forged because the evidence firmly established that Appellant forged the check.

First, Appellant was the beneficiary. The check was made out to Appellant directly, and there is no evidence that anyone else would be motivated to make him the beneficiary.

Second, Appellant had unlimited access to the checkbook because he lived in the shop where it was kept in an unlocked truck. Additionally, the evidence does not support an alternative perpetrator theory. While other employees had been in Jed's truck before, Appellant was the Owens' only employee in the four to six months before the check was passed. 1 RR 139-40. Jed also testified that most people called him instead of stopping by the shop. 1 RR 139-40. And because he stored the truck in the shop overnight, the likelihood that persons who entered the shop during business hours had access to the truck is slight. 1 RR 134-35.

The forged check was close enough to show familiarity but imprecise enough to show it was forged. Having had received checks from Jimmie in the past, Appellant knew the specific manner in which he issued his paychecks. Thus, it included the particular memo-line notation "Contract Labor." But the use of "Jim E. Owens" for the signature, a style that was never used by Jimmie when issuing checks, confirms it was not genuine.

Appellant's choice of venue for cashing the check is also consistent with his forgery scheme. As the court of appeals' dissent observed, he cashed it at the liquor

6

store because he knew he would not be scrutinized and that it would be honored.

Finally, even if the evidence did not show that Appellant was the forger, the evidence would nonetheless show he knew it was forged. As the dissent observed, Appellant did not actually do any work for the Owens' to warrant payment, so the "windfall" payment for his labor is inexplicable, as is his acceptance of payment for labor not performed.

**Unlike the Court's 1977 *Stuebgen* Decision**

The majority also erred to conclude that this case is controlled by *Stuebgen v. State*, 547 S.W.2d 29 (Tex. Crim. App. 1977). *Ramsey*, 2014 Tex. App. LEXIS 13519, at *4-6. In that case, the appellant was convicted of forgery for passing a check belonging to his employer made payable to him with his employer's forged signature. *Stuebgen*, 547 S.W.2d at 31. This Court noted that the employer testified that appellant had been his employee, he normally paid employees by check, he kept the checkbook in his truck, and that three to five of his employees, including the appellant, rode in the truck at the time the check was forged. *Id*. Finding the evidence insufficient to show that the appellant knew the check was forged, the Court stated:

> In the instant case, the record reflects that appellant made no statement from which it could be inferred that he knew the instrument was forged. Appellant was listed as the payee, and appellant did not falsely represent himself. No evidence was introduced to show that anything appearing on the check was in appellant's handwriting. Although appellant had access to [his employer's] checkbook, and [his employer] normally paid his

7

employees personally, we do not find that this evidence is sufficient to discharge the State's burden of showing that appellant acted with intent 'to defraud or harm' another.

*Id*. at 32.

*Stuebgen* has no application here. First, it is a pre-*Jackson v. Virginia*-era case. Therefore, *Jackson*'s ground rules about deferring to the jury's resolution of the facts was not yet established, and the Court did not apply such a standard on its own. In fact, the *Stuebgen* Court appeared to apply the now-defunct, reasonable alternative hypothesis standard.[2] Under *Jackson*—as applied today—it is likely that this Court would reach the opposite conclusion.

Next, even if *Stuebgen* is regarded as good law, the quantum of evidence in this case differs significantly from that in *Stuebgen*. Here, Appellant's access to the checkbook was nearly exclusive, as opposed to *Stuebgen*'s three to five employees. Thus, there is no reasonable, alternative culprit here.[3] Additionally, the evidence strongly supports Appellant's identity as the forger. Here, there is a nexus between Appellant and the check because of the obvious attempt to duplicate the unique manner in which Jimmie issued Appellant's paychecks.

---

[2] *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (recognizing that the alternative reasonable hypothesis standard is no longer applicable when reviewing legal sufficiency).

[3] And again, the reasonable, alternative culprit theory relied upon in *Stuebgen* would be an improper application of the sufficiency standard today.

**Conclusion**

The fact and circumstances surrounding the passing of the check support the finding that Appellant forged it himself and therefore intended to defraud or harm Jimmie Owens. The court of appeals' decision represents a marked departure from *Jackson*'s sufficiency analytical construct, 443 U.S. at 318-19, 326, because it failed to acknowledge the significance of all the facts and logical inferences that support the jury's verdict. This Court should grant review and reinstate Appellant's conviction.

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant review and reverse the decision of the court of appeals.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300


/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney
Bar I.D. No. 24031632


P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512-463-1660 (Telephone)
512-463-5724 (Fax)

10

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that according to the WordPerfect word count tool this document contains 1,594 words, exclusive of the items excepted by TEX. R. APP. P. 9.4(i)(1).

/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the State's Petition for Discretionary Review has been served on January 29, 2015, via certified electronic service provider to:

Hon. J. Michael Criswell
Swisher County Attorney
119 South Maxwell
Tulia, Texas 79088
swisherca@swisher-tx.org

Hon. Troy Bollinger
600 Ash Street
Plainview, Texas 79072
troy@laneybollinger.com

/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney

12

# APPENDIX



**DONALD LYNN RAMSEY AKA DONALD LYNN RAMSAY, APPELLANT v.
THE STATE OF TEXAS, APPELLEE**

**No. 07-14-00249-CR**

**COURT OF APPEALS OF TEXAS, SEVENTH DISTRICT, AMARILLO**

*2014 Tex. App. LEXIS 13519*

**December 17, 2014, Decided**

**NOTICE:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [*1] On Appeal from the 242nd District Court, Swisher County, Texas. Trial Court No. B-4502-13-07, Honorable Edward Lee Self, Presiding.

**JUDGES:** Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ. Patrick A. Pirtle, Justice.

**OPINION BY:** Brian Quinn

**OPINION**

**MEMORANDUM OPINION**

Appellant Donald Lynn Ramsey, aka Donald Lynn Ramsay, appeals his conviction of forgery committed against an elderly person by contending the evidence is insufficient to sustain the conviction. We reverse the judgment.

The standard of review is discussed in *Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App. 2010)*. We refer the parties to that opinion in lieu of reiterating its content.

Next, the State alleged, via indictment, that appellant "with the intent to defraud or harm another, namely JIMMIE E. OWENS, an elderly individual 65 years of age or older, pass[ed] to Janna Parson, a forged writing, knowing such writing to be forged, and such writing had been so executed so it purported to be the act of JIMMIE E. OWENS . . . ." The statute upon which the allegation was founded made it an offense for a person to forge a writing with the intent to defraud or harm another. *See* TEX. PENAL CODE ANN. *§ 32.21 (b)* (West 2011).[1] Because an element of the crime charged required proof that the accused acted with the intent to defraud or harm [*2] another, the "State necessarily had to prove that . . . [the accused] knew that the . . . [item was] forged . . . ."

*Okonkwo v. State, 398 S.W.3d 689, 695 (Tex. Crim. App. 2014)*; *accord Stuebgen v. State, 547 S.W.2d 29, 32 (Tex. Crim. App. 1977)* (stating that "[w]hile the requisite culpable mental state . . . [for the offense of forgery of a writing] is 'intent to defraud or harm,' we fail to perceive how such culpable mental state can be shown absent proof of knowledge that the instrument is forged."). And, while intent may be inferred from circumstantial evidence such as words, acts, or conduct, *Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)*, intent to defraud cannot be inferred from mere evidence of possession, passage, or presentment of a forged instrument. *Johnson v. State, 425 S.W.3d 516, 520 (Tex. App.--Houston [1st Dist.] 2012, pet. ref'd)*.

> 1 The definition of "forge" includes to "alter, make, complete, execute or authenticate any writing so that it purports . . . to be the act of another who did not authorize that act . . . ." TEX. PENAL CODE ANN. *§ 32.21(a)(1)(A)(i)* (West 2011).

According to the evidence here, the $65 check negotiated by appellant was made payable to him and contained the signature "Jim E. Owens." Listed on the memorandum line was the phrase "Contract Labor." The record contains no evidence illustrating who wrote that information on the item. Nor does it contain evidence indicating that the handwriting on the instrument was similar [*3] to that of appellant.

Other evidence illustrated that 1) J. E. Owens, eighty-five years old, signed his checks as Jimmie E. Owens, Jimmie Owens, or J. E. Owens; 2) appellant worked for him and his son Jed; 3) appellant had been paid in the past with checks written with the words "Contract Labor" on the memorandum line; 4) the two authorized signatories on the account were J. E. Owens who is Jimmie Owens and J. J. Owens who is Jed Owens; 5) J. E. did not sign or authorize anyone to sign the check in question; 6) Jed did not sign the check or authorize another to do so; 7) appellant lived in the

Owens' shop; 8) the checks were kept in an unlocked truck; 9) appellant had access to the truck; and 10) others who came to the shop had access to the truck as well.

The record further discloses that Janna Parson owned the Booger Red Liquor store, which was located a block and a half from the Owens Motor Machine shop. She testified that appellant was a customer and passed that check on June 11, 2013. Testimony also disclosed that she had received permission from the Owens to cash paychecks for appellant. There is no evidence about whether she recognized the signature on the check as genuine.

In **[*4]** *Stuebgen v. State*, the defendant cashed a check made payable to him. The name of the account owner appeared on the check, but the owner testified that he did not sign the instrument. Additionally, the accused was an employee of the account owner who also happened to keep his checkbook in his truck. And, as here, individuals in addition to the accused had access to the vehicle and no evidence appeared of record indicating that the writing on the instrument was similar to that of the accused. Given these circumstances, our Court of Criminal Appeals was asked to determine whether sufficient evidence appeared of record from which a rational jury could infer, beyond reasonable doubt, that the accused intended to defraud or harm. In response, the court said:

> In the instant case, the record reflects that appellant made no statement from which it could be inferred that he knew the instrument was forged. Appellant was listed as the payee, and appellant did not falsely represent himself. No evidence was introduced to show that anything appearing on the check was in appellant's handwriting. Although appellant had access to Chitwood's checkbook, and Chitwood normally paid his employees personally, **[*5]** we do not find that this evidence is sufficient to discharge the State's burden of showing that appellant acted with intent "to defraud or harm another."

*Stuebgen v. State, 547 S.W.2d at 32*.

We find it difficult to distinguish the material circumstances in *Stuebgen* from those before us. Consequently, we find the outcome in *Stuebgen* controlling here. To the extent that access to the checks and passing the check was not enough to establish intent

to defraud there, it was not enough here. Simply put, there is no evidence of record from which a rational fact finder could infer, beyond reasonable doubt, that appellant knew the instrument was forged and, therefore, intended to defraud or harm either Owens. *See also Crittenden v. State, 671 S.W.2d 527, 528 (Tex. Crim. App. 1984)* (finding no evidence of intent to defraud from a record in which the defendant made no statement from which it could be inferred that he knew the instrument was forged, he was listed as the payee and he did not falsely represent himself, no evidence was introduced to show that anything on the check was in the defendant's handwriting, there was no showing of any connection between the check stolen from the service station and appellant prior to the time he said he received it in the mail, and he made no attempt to **[*6]** flee after his attempt to deposit the check was thwarted).

We do not have a situation like that in *Oldham v. State, 5 S.W.3d 840 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd)*. There, the accused represented to the person to whom she passed the check that she obtained the instrument from her employer. Yet, she did not work for the person. *Id. at 843-45*. The misrepresentation allowed the fact finder to reasonably infer that the writing was forged. So, the State's reliance on *Oldham* is misplaced.[2]

> 2  In *Williams v. State, 688 S.W.2d 486 (Tex. Crim. App. 1985)*, another case relied on by the State, the defendant was asked by the cashier where he had obtained the money order he sought to cash, and he replied that he had done some work for a lady and she paid him with it. *Id. at 488*. The utterance was false, and from that the jury could rationally infer his knowledge of the forgery. *Id. at 490*.

Nor does the evidence that J. E. Owens signed the checks as "J. E. Owens" constitute proof that appellant knew the check was forged. Again, Owens testified that he had also signed checks in other ways, such as "Jimmie Owens" or "Jimmie E. Owens." So, it cannot be rationally inferred that appellant knew of the forgery because the signature line did not contain "J. E. Owens" in this instance. Moreover, to accept the State's argument would require us to presume that **[*7]** appellant knew how Owens signed his checks, but we found no evidence to support that. Appellant did not testify; nor did anyone so testify. Nor does the record contain a description of the number of checks previously written to appellant and the particular name appearing on the signature line. It would seem necessary for such to appear of record before one can logically infer that the payee somehow knew whether or not the signature on a

later instrument was genuine or fake simply by looking at the signature.

Based on this record, we find the evidence insufficient to establish that appellant 1) knew the instrument was forged or 2) had the requisite intent to defraud or harm.[3] Consequently, we reverse the judgment and render a judgment of acquittal.

> 3 Per *Bowen v. State, 374 S.W.3d 427, 431-32 (Tex. Crim. App. 2012)*, we perused the record to determine if the crime for which appellant was tried encompassed a lesser-included offense having evidentiary support. None was found.

Brian Quinn

Chief Justice

**DISSENT BY:** Patrick A. Pirtle

**DISSENT**

**DISSENTING OPINION**

Applying the precedent of *Stuebgen v. State*[1] and *Crittenden v. State*,[2] the majority reverses Appellant's forgery by passing conviction by finding the evidence insufficient to establish that Appellant knew the instrument was **[*8]** a forgery or that he had the requisite intent to defraud or harm another. Because I would distinguish the facts of this case from those in *Stuebgen* and *Crittenden*, and because I find there is sufficient circumstantial evidence to sustain Appellant's conviction, I respectfully dissent.

> 1 *Stuebgen v. State, 547 S.W.2d 29 (Tex. Crim. App. 1977)*.
> 2 *Crittenden v. State, 671 S.W.2d 527 (Tex. Crim. App. 1984)*.

Although the underlying facts of this case are appropriately set out in the majority opinion, I will briefly summarize those facts pertinent to my analysis of the evidence. On June 11, 2013, Appellant went to the Booger Red Liquor Store in Tulia, Texas, where he was a regular customer, and cashed a check for $65. The check was made out to Appellant and was drawn on the account of Owens Motor Machine at Centennial Bank. The account belonged to J.E. Owens and his son, Jed Owens. A customer service representative of the bank testified that the account had two authorized signators, "J.E. Owens" and "J.J. Owens."

The check in question, check number 1313, was made out to Donald Ramsey and was signed by "Jim E. Owens." The memo section of the check reflected that it was for "contract labor." J.E. Owens testified that although he has signed checks in the past as "Jimmie E.

Owens," he did not sign check number **[*9]** 1313 and he did not authorize anyone to sign it for him. He further testified that he did not authorize delivery of the check to Appellant and he did not write the words "contract labor" on the instrument. Jed Owens also testified that he did not sign the check or authorize its issuance. The clerk from the liquor store testified that she had previously been authorized by Jed Owens to cash Appellant's paychecks. Additional testimony established that Appellant had previously been employed by the Owens and had prior access to the location where the Owens Motor Machine checkbook was stored.

Omitting the formal parts, the indictment in the instant case charged that Appellant:

> "did then and there, with intent to defraud or harm another, namely Jimmie E. Owens, an elderly individual 65 years of age or older, pass to Janna Parson, a forged writing, knowing such writing to be forged, and such writing had been so executed so it purported to be the act of Jimmie E. Owens, who did not authorize the act . . . ."

A person commits the offense of forgery if he forges an instrument with intent to defraud or harm another.[3] While it is true that the State must establish every element of the offense charged, **[*10]** the intent to defraud or harm another may be established by circumstantial as well as direct evidence. *Williams v. State, 688 S.W.2d 486, 490 (Tex. Crim. App. 1985)*. In *Williams* the Court of Criminal Appeals found the evidence was sufficient to discharge the State's burden of showing that the accused acted with intent to defraud or harm another when it established he made an affirmative statement that he received the money order he was attempting to pass in exchange for work performed, when other evidence established that the instrument had been stolen.

> 3 The definition of "forge" includes to "alter, make, complete, execute or authenticate any writing so that it purports . . . to be the act of another who did not authorize that act . . . ." *TEX. PENAL CODE ANN. § 32.21(a)(1)(A)(i)* (West 2011). The definition also includes to "issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A)." *Id*. at *§ 32.21(a)(1)(B)*.

The *Stuebgen* case is distinguishable. In that case the Court found that the element of "intent to defraud or

harm another," found in *section 32.21(b)*, necessarily implicated a culpable mental state that included "knowing [the forged instrument] was forged at the time of the passing," an element specifically required **[*11]** under the former Penal Code. *See* Articles 996, 979 VERNON'S ANN. PENAL CODE. *Cf. TEX. PENAL CODE ANN. § 32.21(b)* (West 2011). Similar to the facts of this case, in *Stuebgen* the accused passed a check made payable to himself and purportedly signed by his employer. The Court of Criminal Appeals held that since the accused made no statement from which it could be inferred that he knew the instrument was forged, the evidence was insufficient to discharge the State's burden of showing he acted with the intent to defraud or harm another. It should be noted, however, that unlike the record in this case, the record in *Stuebgen* does not reflect the forged instrument contained a memo concerning the purpose for which the instrument was given.

In *Crittenden* the Court of Criminal Appeals reversed a forgery conviction because the State failed to show the accused had knowledge that the instrument was forged. In that case, the accused attempted to open a checking and savings account by depositing a forged check. When the bank teller questioned the instrument and called the owner of the account, she was told the check had been stolen. The police were summoned and the accused explained he thought the check was from his attorney, **[*12]** representing proceeds from a personal injury case. Because there was no showing of any connection between the accused and the stolen check, he made no statements from which it could be inferred that he knew the check was stolen, and he made no attempt to flee after his attempt to deposit the check was thwarted, the Court found the evidence was insufficient to show that he had the intent to defraud or harm another.

I find that the instant case to be more appropriately governed by the holding in *Williams*. Here, similar to *Williams* and unlike *Stuebgen* and *Crittenden*, Appellant attempted to pass an instrument that clearly stated that it was given for a specific purpose, to-wit: "contract labor." Furthermore, the evidence established that he was a former employee of the purported maker of the check, had access to a checkbook from their account and passed the instrument at a location where he knew his "paychecks" would be honored. Reviewing the evidence in the light most favorable to the jury's verdict, the evidence in this case circumstantially establishes that Appellant passed the check under circumstances inferentially representing the check was given for services rendered. As such, because **[*13]** the testimony of J.J. Owens and Jed Owens circumstantially established that the check was not issued to Appellant for services rendered, I believe a rational and fair-minded juror could conclude beyond a reasonable doubt that Appellant knew the instrument was forged when he passed it. Accordingly, I would overrule Appellant's sufficiency issue and affirm the judgment of conviction. *See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)*; *Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)*.

Patrick A. Pirtle

Justice

Do not publish.